939 A.2d 794

IN RE OPINION 710 OF THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS AND ITS SUBSEQUENT CLARIFICATION.

Argued January 8, 2008—Decided February 6, 2008.

*Miles S. Winder, III,* argued the cause for appellant New Jersey State Bar Association (*Lynn Fontaine Newsome,* President, attorney; *Ms. Newsome* and *Mr. Winder,* of counsel; *Michael J. Fasano,* on the briefs).

*Emerald E. Kuepper,* Deputy Attorney General, argued the cause for respondent New Jersey Supreme Court Advisory Committee on Professional Ethics (*Anne Milgram,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Denise M. Illes,* Deputy Attorney General, on the brief).

PER CURIAM.

We granted the New Jersey State Bar Association's (NJSBA) petition to review Advisory Committee on Professional Ethics (ACPE) *Opinion 710,* entitled *Misrepresenting Purchase Price or*

*Other Material Fact Regarding a Real Estate Transaction,* 186
*N.J.L.J.* 1198 (2006). *In re Opinion 710 of the Advisory Comm.
On Prof'l Ethics & Its Subsequent Clarification,* 191 *N.J.* 310, 923
*A.2d* 227 (2007). The ACPE received an inquiry seeking an
advisory opinion on the ethical propriety of a real estate transac-
tion that the inquirer posited " 'is a fraudulent practice perpetrat-
ed on the ultimate investor.' " *Opinion 710, supra,* 186 *N.J.L.J.*
at 1198. In the factual scenario provided by the inquirer,

> [a] contract for the sale of residential property has been prepared by a realtor and
> signed by both seller and buyer for a set purchase price with a mortgage
> contingency. Either during attorney review or thereafter, the lawyers for the
> seller and the buyer are requested to amend the contract by increasing the
> purchase price and the mortgage contingency amount in like amounts. In addition,
> the attorneys are asked to amend the contract to provide that the seller give a
> credit to the purchaser at closing in the same amount, calling it a "seller's
> concession" or "seller's payment of purchaser's closing costs."
> [*Ibid.*]

In that scenario given to the ACPE, the inquirer further
declared that the amendments to the contract are intended to
"increase the size of the purchaser's mortgage loan," with the
understanding that "the originating lender or the secondary inves-
tors may be deceived as to the true market price of the house."
*Ibid.* The ACPE assumed that the seller's concession in that
scenario did not involve legitimate or actual costs "payable by the
buyer." *Ibid.* The ACPE therefore reviewed a factual supposi-
tion in which a lawyer actively participated in a real estate
transaction likely to perpetrate a fraud on the ultimate investor,
namely the mortgage lender, a purchaser of the mortgage on a
secondary market, or a buyer of mortgage-backed securities.
*Ibid.* Unsurprisingly, the ACPE concluded that such a practice
would violate *Rules of Professional Conduct* 1.2(d) ("A lawyer
shall not counsel or assist a client in conduct that the lawyer
knows is illegal, criminal or fraudulent . . . ."), 4.1(a) ("In repre-
senting a client a lawyer shall not knowingly: (1) make a false
statement of material fact or law to a third person; or (2) fail to
disclose a material fact to a third person when disclosure is
necessary to avoid assisting a criminal or fraudulent act by a
client."), and 8.4 ("It is professional misconduct for a lawyer to . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . ."). *Opinion 710, supra,* 186 *N.J.L.J.* at 1198.

The ACPE issued a clarification to *Opinion 710* in response to numerous inquiries concerning the propriety of seller's concessions. In its clarification, the ACPE explained that the opinion, which was based on the particular facts submitted by the inquirer,

> addresses fictional and deceptive increases in purchase prices unrelated to the actual circumstances or costs of closing, and contrary to the expectations of the lender or the ultimate holder of the mortgage. As stated in the Opinion, a prohibited transaction is one that is not premised on "a legitimate charge against the seller on account of any actual costs assumed by it and otherwise payable by the buyer." Accordingly, the Opinion does not implicate a contract of sale that explicitly states that the seller shall provide the buyer with a credit against legal and legitimate costs or expenses related to the sale, which would otherwise be absorbed by the buyer, such as actual closing costs.
>
> [*Clarification of Advisory Comm. on Prof'l Ethics Opinion 710,* 187 *N.J.L.J.* 2, 2 (2007).]

Essentially, the ACPE was asked a very simple question—whether the Rules of Professional Conduct are violated when a seller and a buyer engage in a seller's concession for the purpose of perpetrating a fraud on the ultimate investor. We are confident that attorneys in this state know that they cannot participate in deceptive transactions. *Opinion 710* stands for the unremarkable proposition that fraudulent transactions by attorneys in connection with real estate closings will run afoul of the Rules of Professional Conduct. It does not suggest that disclosed seller's concessions are, in and of themselves, fraudulent or unethical. With that in mind, lawyers versed in their ethical responsibilities have nothing to fear from ACPE *Opinion 710.*

For those reasons, we affirm ACPE *Opinion 710* as clarified.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.